**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
:
MOLLIE MINSKOFF, :
:
                Plaintiff, : **Case No.: 23-cv-584**
:
    v. : **AMENDED**
: **COMPLAINT**
HECTOR MENDOZA, JR., :
: **JURY TRIAL DEMANDED**
                Defendant. :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Mollie Minskoff ("Ms. Minskoff" or "Plaintiff"), by and through her undersigned attorneys, as and for her Amended Complaint against Hector Mendoza, Jr. ("Mr. Mendoza" or "Defendant"), hereby alleges as follows:

## INTRODUCTION

1. Ms. Minskoff brings this action pursuant to the Adult Survivors Act, New York Civil Practice Law and Rules ("CPLR") 214-j and the New York City Victims of Gender-Motivated Violence Protection Act, New York City Administrative Code Section 10-1104, following years of suffering in silence.

2. From approximately 2010 through 2016, Ms. Minskoff was subjected to physical, sexual, and emotional abuse by Mr. Mendoza.

3. Indeed, one instance of sexual abuse led to Mr. Mendoza's criminal prosecution, and another to the conception of Ms. Minskoff's daughter.

4. Throughout the course of her abuse, Ms. Minskoff remained silent but, years later, motivated by the #metoo movement, Ms. Minskoff found her voice.

5. Ms. Minskoff now seeks redress for her injuries and to demonstrate to other victims of domestic abuse that they are not alone.

## PARTIES

6. Ms. Minskoff is a single mother of two young children, a real estate agent, and writer. She is a resident and domiciliary of the State of Washington.

7. On information and belief, Mr. Mendoza is an executive assistant. He is a resident and a domiciliary of the State of California.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000.

9. Venue is proper in the United States District Court, Eastern District of New York, pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred in this judicial district.

10. This Court has personal jurisdiction over Mr. Mendoza pursuant to New York's long-arm statute, CPLR 302(a)(2).

## FACTUAL ALLEGATIONS

**I.     The Parties' Relationship Quickly Turns Toxic.**

11. In 2009, Ms. Minskoff and Mr. Mendoza were introduced at an event in New York City.

12. By 2010 they were dating and, that same year, Mr. Mendoza moved into Ms. Minskoff's apartment in Tribeca.

13. Shortly thereafter, however, Ms. Minskoff and Mr. Mendoza's relationship took a turn for the worse.

14. Mr. Mendoza became increasingly jealous of Ms. Minskoff and, as a result, began physically, sexually, and emotionally abusing Ms. Minskoff.

15. The abuse had damaging effects on Ms. Minskoff's other relationships—specifically with her friends who witnessed the abuse and could not turn a blind eye.

16. As part of the abuse, Mr. Mendoza would manipulate Ms. Minskoff into buying him expensive music equipment and other gifts, all while living rent-free and on Ms. Minskoff's dime.

17. In November 2010, Mr. Mendoza convinced Ms. Minskoff to ask her father for over $15,000 so that she could purchase music equipment for him from the Guitar Center located at 25 West 14th Street in Manhattan.

18. The physical abuse began at a bar in Midtown Manhattan.

19. While out with their friends, Mr. Mendoza pushed Ms. Minskoff off a stool.

20. Further, during the one-year period that the parties lived together in Tribeca, the police were called to Ms. Minskoff's apartment several times—sometimes by Mr. Mendoza but often times by Ms. Minskoff.

21. On February 18, 2011, Ms. Minskoff spent the day with long-time friend Carolyne Cass.

22. Throughout the day, Ms. Cass noticed that Ms. Minskoff was covered in bruises and not acting like her normal self.

23. That night, police were called to Ms. Minskoff's apartment after a verbal argument between Ms. Minskoff and Mr. Mendoza turned physical.

24. When police arrived at the Tribeca apartment, they witnessed Ms. Minskoff covered in bruises and other marks.

25. Mr. Mendoza was subsequently arrested and a temporary order of protection was issued.

26. Shaken from the altercation and in need of comfort, Ms. Minskoff called Ms. Cass to come over to the Tribeca apartment and be with her.

27. Mr. Mendoza was thereafter charged with assault, criminal obstruction of breathing, and harassment.

28. Throughout the criminal prosecution of that matter, Mr. Mendoza's friends and family frequently reached out to Ms. Minskoff, begging her to drop the charges against Mr. Mendoza and telling her again and again how sorry he was for his actions.

29. As a result of this pressure, Ms. Minskoff asked the District Attorney's office to drop the charges against Mr. Mendoza.

**II.   Despite Criminal Charges, the Abuse Continues.**

30. The initiation of criminal proceedings against Mr. Mendoza did not stop his abusive behavior towards Ms. Minskoff for long, and Mr. Mendoza's physical, sexual, and emotional abuse of Ms. Minskoff persisted over the next five years—despite the parties' relationship ending and despite the parties living on opposite coasts.

31. In August 2011, Ms. Minskoff learned that she was pregnant with the parties' child.

32. In response, Mr. Mendoza pushed Ms. Minskoff to get an abortion at his expense.

33. Capitulating to Mr. Mendoza's demands, and recognizing his unwillingness to accept the responsibilities of fatherhood, Ms. Minskoff ultimately folded and terminated the pregnancy.

34. Thereafter Ms. Minskoff learned that Mr. Mendoza did not foot the bill for the abortion as he promised—rather, he contacted her father, behind her back, to ask for the funds.

35. The abortion and continuous abuse sent Ms. Minskoff into a spiral and she was eventually prescribed medication to help her cope with depression.

36. In December 2011, Ms. Minskoff admitted herself into Passages Malibu to recover and attend therapy.

37. While in treatment at Passages Malibu, Mr. Mendoza visited Ms. Minskoff and forced her to have sexual intercourse with him on a bench along a walkway.

38. In 2012, while Ms. Minskoff was living in Brooklyn and Mr. Mendoza in Harlem, they got into an altercation at Ms. Minskoff's apartment.

39. That altercation ended with Mr. Mendoza punching Ms. Minskoff in the face and forcing her to have sexual intercourse with him.

40. Specifically, when Ms. Minskoff stated that she would not have sexual intercourse with Mr. Mendoza, Mr. Mendoza grabbed her arms, threw Ms. Minskoff down on

the bed, held her down while he took her clothes off and inserted his penis into Ms. Minskoff's anus and vagina.

41. In January 2014, while Ms. Minskoff was living at The Edge, 22 North 6th Street, in Brooklyn and Mr. Mendoza in Los Angeles but visiting family in New York City, Mr. Mendoza visited Ms. Minskoff's apartment.

42. Mr. Mendoza was often hostile during his visits to The Edge, sometimes even screaming at the doormen on the off chance they called him the wrong name.

43. On this particular visit in January 2014, the parties got into a verbal argument after Mr. Mendoza entered Ms. Minskoff's apartment.

44. The argument led to Mr. Mendoza hitting Ms. Minskoff several times in the face and stating that she was a horrible person but that he loved her and wanted to have sexual intercourse with her.

45. Ms. Minskoff declined his advances but Mr. Mendoza would not take "no" for an answer.

46. Mr. Mendoza proceeded to grab Ms. Minskoff, throw her onto the couch, and insert his penis into her vagina.

47. After Mr. Mendoza finished raping Ms. Minskoff, Ms. Minskoff got up and headed to the bathroom with the intent to lock herself inside.

48. Before Ms. Minskoff reached the bathroom, Mr. Mendoza grabbed her, brought her into the bedroom and inserted his penis into her anus.

49. This incident resulted in injuries to Ms. Minskoff, including but not limited to bruises under Ms. Minskoff's eyes:



50. Although Ms. Minskoff tried her best to conceal these bruises, several of her friends, including but not limited to Ms. Cass and Ms. Minskoff's friend and ex-boyfriend, Oscar Toro, noticed their presence.

51. Later, in March 2014, despite Ms. Minskoff arriving at Mr. Mendoza's apartment in Los Angeles for a planned weekend together, when Ms. Minskoff arrived, Mr. Mendoza insisted that she was "breaking in" to his house and attempted to throw Ms. Minskoff out onto the street in the middle of the night.

52. Ultimately, rather than leave her on the street in a seedy part of Los Angeles, Mr. Mendoza raped Ms. Minskoff and let her sleep on his couch.

53. Again, in May 2014, while on vacation with Ms. Minskoff's friends in the Bahamas, a verbal altercation between Ms. Minskoff and Mr. Mendoza turned physical, resulting in, among other things, scratches to Ms. Minskoff's face:



54. Finally, on March 11, 2015, while Ms. Minskoff was again staying in Los Angeles, she treated Mr. Mendoza and his friends to dinner for Mr. Mendoza's birthday.

55. What Ms. Minskoff perceived as a normal night out, Mr. Mendoza—albeit after-the-fact—portrayed quite differently, insisting that Ms. Minskoff made a fool of herself around his friends.

56. When Ms. Minskoff and Mr. Mendoza met days later to discuss Mr. Mendoza's version of the event, Mr. Mendoza drugged and raped Ms. Minskoff (the "March 2015 Rape").

57. Ms. Minskoff awoke out of a fog a day or so later, knowing little more than that Mr. Mendoza had vaginally penetrated her and that her dress was saturated with Mr. Mendoza's semen.

58. Upon leaving Mr. Mendoza's apartment, Ms. Minskoff called long-time friend Hannah Fielder to confide in her that she and Mr. Mendoza had yet another altercation and that she had no memory of what happened thereafter, but her body felt like she had had sexual intercourse.

### III. Ms. Minskoff's Attempt to Escape From the Cycle of Abuse.

59. Shortly after the March 2015 Rape, Ms. Minskoff learned that she was pregnant.

60. Upon learning this information, Ms. Minskoff became determined to break the cycle of abuse and disassociate from her toxic relationship with Mr. Mendoza.

61. However, upon learning of Ms. Minskoff's pregnancy, Mr. Mendoza tried to convince her to have an abortion and bombarded her with demeaning messages such as:

   a. "Find yourself someone who loves you, get married, have a child. Do it the right way;"

   b. "You're a fucked up person;"

   c. "You have the worst daddy issues of anyoen [sic] I've ever met;"

   d. "Think about your childhood, think about how fucked up you are because of your split parents;"

   e. "I pray to God you don't use your evil to try to ruin a humans life;" and

   f. "You're a disgusting excuse for a human"

62. Ms. Minskoff, desperate for her daughter to have a father figure in her life, ignored Mr. Mendoza's remarks.

63. The emotional abuse continued after the birth of Ms. Minskoff's daughter but, despite Ms. Minskoff's attempts to bring Mr. Mendoza into the fold, Mr. Mendoza was unable

to live up to Ms. Minskoff's expectations and be a part of Ms. Minskoff's daughter's life in any meaningful way.

64. Around the time of the birth of her daughter, Ms. Minskoff began to confide in a select few friends about the details surrounding the 2015 Rape and her daughter's conception.

65. The parties' communication ended in 2017.

66. As a result of the above-described physical, sexual, and emotional abuse, Ms. Minskoff sustained, and continues to sustain, psychological, mental, and physical trauma.

67. By reason of the above-described unlawful acts of Mr. Mendoza, Ms. Minskoff sustained permanent injuries, including but not limited to post-traumatic stress disorder, anxiety, depression, emotional distress and physical sequelae thereof, nightmares, flashbacks, inability to sleep, severe physical pain and suffering, severe emotional pain and suffering, embarrassment, and multiple other permanent injuries.

68. Upon information and belief, some of all of the injuries described above are permanent, and Ms. Minskoff has expended and/or will expend sums of money for treatment.

**IV. Ms. Minskoff Finds Her Voice.**

69. As a result of the #metoo movement, Ms. Minskoff found the courage to come forward and to tell her family and friends about the years of physical, sexual, and emotional abuse she suffered from Mr. Mendoza.

70. In October 2020, Ms. Minskoff visited the New York Police Department's ("NYPD") 90th Precinct and gave a statement about the years of abuse she suffered.

71. Around the same time, Ms. Minskoff began posting her story to her social media accounts and on her blogs to help her heal from the trauma she suffered for close to a decade

and to let other survivors know that they are not alone and do not have to suffer from domestic abuse.

72. As a result of Ms. Minskoff speaking out, women across the country reached out to Ms. Minskoff to show their support and/or share similar experiences or concerns regarding Mr. Mendoza.

### V. Mr. Mendoza is Criminally Charged for a Second Time.

73. Following Ms. Minskoff's statement to NYPD, NYPD Detective Elite Won filed a felony complaint in the Criminal Court of the City of New York, Kings County, on or around July 9, 2021, alleging that Mr. Mendoza raped Ms. Minskoff: (1) on or about and between June 1, 2012 and July 31, 2012; and (2) on or about and between January 1, 2014 and January 31, 2014.

74. On July 9, 2021, Mr. Mendoza was apprehended at Los Angeles International Airport based on a warrant issued pursuant to the felony complaint.

75. Mr. Mendoza was housed at a correctional facility in Los Angeles until he was later transported to New York for criminal proceedings.

76. From July 14, 2021, through July 21, 2021—prior to Mr. Mendoza arriving in New York—the People presented the case, including Ms. Minskoff's sworn testimony, to a Grand Jury.

77. At the conclusion of the People's presentation, a Grand Jury voted to indict Mr. Mendoza on two counts of rape in the first degree (New York Penal Law ("PL") Section 130.35(1)) and two counts of a criminal sexual act in the first degree (PL Section 150.50(1)).

78. The People filed the indictment on July 22, 2021.

79. After prosecuting the case against Mr. Mendoza for many months, the indictment was dismissed on February 10, 2022.

**VI.  Mr. Mendoza Sues Ms. Minskoff in State Court.**

80. Following dismissal of the criminal charges against Mr. Mendoza, Mr. Mendoza sued Ms. Minskoff in New York State Supreme Court, Kings County (hereinafter, the "State Court Lawsuit"), alleging (1) malicious prosecution and (2) two causes of action for defamation.

81. In the Complaint, Mr. Mendoza alleged that Ms. Minskoff made false statements to NYPD leading to his criminal prosecution. As for his defamation claims, Mr. Mendoza argued that he was defamed by certain posts made by Ms. Minskoff on Instagram.

82. The State Court Lawsuit is currently ongoing.

**FIRST CAUSE OF ACTION**
**(Assault/Sexual Assault)**

83. Ms. Minskoff incorporates the allegations contained in each and every preceding paragraph above as if fully recited herein.

84. As described above, Mr. Mendoza violently, forcibly, and against Ms. Minskoff's will and without her consent, frightened and placed her in apprehension of harm when he physically and violently sexually assaulted and raped her.

85. Specifically, Mr. Mendoza used his body, fingers, and penis to forcibly touch and attempt and/or threaten to touch Ms. Minskoff's intimate areas and/or to touch her with his own intimate body parts, including, but not limited to penetrating Ms. Minskoff's vagina and anus.

86. Mr. Mendoza's abusive, manipulative, and unlawful acts against Ms. Minskoff created a reasonable apprehension in Ms. Minskoff of immediate harmful or offensive contact as to Ms. Minskoff's person, all of which was done intentionally by Mr. Mendoza without Ms. Minskoff's consent.

87. The conduct of Mr. Mendoza described above was willful, wanton, and malicious. At all relevant times, Mr. Mendoza acted with conscious disregard for Ms. Minskoff's rights and feelings, acted with knowledge of or with reckless disregard for the fact that his conduct was certain to cause injury and/or humiliation to Ms. Minskoff, and intended to cause fear, physical injury and/or pain and suffering to Ms. Minskoff. By virtue of the foregoing, Ms. Minskoff is entitled to recover punitive damages.

88. As a direct and proximate result of the aforementioned assaults, Ms. Minskoff sustained in the past and will continue to sustain in the future serious and severe psychological injuries and emotional distress, mental anguish, embarrassment, and humiliation.

89. As a direct and proximate result of the aforementioned assaults, Ms. Minskoff has incurred medical expenses and other economic damages, and will now be obligated to expend sums of money for medical care and attention in an effort to cure herself of the injuries and to alleviate her pain and suffering, emotional distress, mental anguish, embarrassment, and humiliation.

90. The damages sought as a result exceed $75,000.

91. This cause of action is timely under the Adult Survivors Act, CPLR 214-j, because it arises out of conduct perpetrated against Ms. Minskoff who was eighteen years or older at the time of the conduct, that constitutes a sexual offense as defined by PL Article 130.

## SECOND CAUSE OF ACTION
### (Battery/Sexual Battery)

92. Ms. Minskoff incorporates the allegations contained in each and every preceding paragraph above as if fully recited herein.

93. As described above, Mr. Mendoza violently, forcibly and against Ms. Minskoff's will and without her consent, subjected her to bodily harm when he physically and violently sexually assaulted and raped her.

94. Mr. Mendoza intentionally, and without her consent, attacked Ms. Minskoff to satisfy his own sexual desires. Mr. Mendoza's physical contact with Ms. Minskoff was harmful, offensive and unlawful under all circumstances. Mr. Mendoza continued to attack and rape Ms. Minskoff despite her attempts to fight against him.

95. Specifically, Mr. Mendoza used his body, fingers, and penis to forcibly touch and attempt and/or threaten to touch Ms. Minskoff's intimate areas and/or to touch her with his own intimate body parts, including but not limited to penetrating Ms. Minskoff's vagina and anus.

96. Mr. Mendoza's actions constitute sexual offenses as defined in PL Article 130, including but not limited to rape in the first degree (§ 130.35), criminal sexual act in the first degree (§ 130.50), sexual abuse in the first degree (§ 130.65), sexual misconduct (§ 130.20), and forcible touching (§ 130.52).

97. Mr. Mendoza's conduct was the direct and proximate cause of Ms. Minskoff's past and future substantial damages, including significant pain and suffering, lasting psychological and pecuniary harms, loss of dignity, and invasion of privacy.

98. The conduct of Mr. Mendoza described above was willful, wanton, and malicious. At all relevant times, Mr. Mendoza acted with conscious disregard for Ms. Minskoff's rights and feelings, acted with knowledge of or with reckless disregard for the fact that his conduct was certain to cause injury and/or humiliation to Ms. Minskoff, and intended to cause fear, physical injury and/or pain and suffering to Ms. Minskoff. By virtue of the foregoing, Ms. Minskoff is entitled to recover punitive damages.

99. The damages sought as a result exceed $75,000.

100. This cause of action is timely under the Adult Survivors Act, CPLR 214-j, because it arises out of conduct perpetrated against Ms. Minskoff who was eighteen years or older at the time of the conduct, that constitutes a sexual offense as defined by PL Article 130.

### THIRD CAUSE OF ACTION
**(Crime of Violence Motivated by Gender)**

101. Ms. Minskoff incorporates the allegations contained in each and every preceding paragraph above as if fully recited herein.

102. Defendant's acts as described above violate Section 10-1104 of the New York City Administrative Code.

103. Specifically, the above-described conduct of Defendant, including, but not limited to, Defendant's sexual assaults and rape of Plaintiff, constitutes a "crime of violence" and a "crime of violence motivated by gender" against Plaintiff as defined by the New York City Victims of Gender-Motivated Violence Act, New York City Administrative Code Section 10-1103.

104. The above-described conduct of Defendant, including, but not limited to Defendant's sexual assaults and rapes of Plaintiff, constitutes a "crime of violence" against

Plaintiff motived: (i) by her gender; (ii) on the basis of her gender; and/or (iii) due, at least in part, to an animus based on her gender.

105. By sexually assaulting and raping Plaintiff, and using his body, fingers, and penis to forcibly touch and attempt and/or threaten to touch Ms. Minskoff's intimate areas and/or to touch her with his own intimate body parts, including, but not limited to penetrating Ms. Minskoff's vagina and anus, Defendant has engaged in "crime[s] of violence" as defined by Section 10-1103 of the New York City Administrative Code. Defendant's actions as described above constitute sexual offenses as defined in PL Article 130, including but not limited to rape in the first degree (§ 130.35), criminal sexual act in the first degree (§ 130.50), sexual abuse in the first degree (§ 130.65), sexual misconduct (§ 130.20), and forcible touching (§ 130.52).

106. Defendant committed a "crime of violence" against Plaintiff because she is a woman and, at least in part, because Defendant has an unlawful animus towards women. Defendant's gender-motivated animus towards women is demonstrated by, among other things, his sexually violent and abusive treatment of women. (*See, e.g.*, ¶ 72, *supra*.)

107. As a direct and proximate result of the aforementioned gender-motivated violence, Plaintiff has sustained in the past, and will continue to sustain, monetary damages, physical injury, pain and suffering, and serious psychological and emotional distress, entitling her to an ward of compensatory damages.

108. Defendant's actions in violation of the New York City Victims of Gender-Motivated Violence Protection Act were intentional, done with malice, and/or showed deliberate, willful, and reckless indifference to Plaintiff's rights, for which she is entitled to an

award of punitive damages and attorney's fees and costs.

109. The damages sought as a result exceed $75,000.

110. This cause of action is timely under the New York City Victims of Gender-Motivated Violence Protection Act, New York City Administrative Code Section 10-1104, because it arises out of conduct perpetrated against Ms. Minskoff who was eighteen years or older at the time of the conduct, that constitutes a "crime of violence" as defined by New York City Administrative Code Section 10-1103.

## FOURTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)

111. Ms. Minskoff incorporates the allegations contained in each and every preceding paragraph as if fully recited herein.

112. The foregoing actions of Mr. Mendoza were done willfully, intentionally, and/or recklessly.

113. Mr. Mendoza engaged in the foregoing outrageous and unlawful conduct toward Ms. Minskoff with the intention to cause, or with reckless disregard for the probability of causing, Ms. Minskoff to suffer severe emotional distress.

114. The foregoing actions of Mr. Mendoza were extreme and outrageous to such a degree as to go beyond all possible bounds of decency and were atrocious and utterly intolerable in a civilized society.

115. As a direct and proximate result of the assaults and batteries to Ms. Minskoff, Ms. Minskoff suffered, and continues to suffer, from extreme mental distress, humiliation, anguish, and emotional and physical injuries, as well as economic losses, in amounts to be proven at trial.

116. Mr. Mendoza committed the acts alleged herein maliciously and oppressively with the wrongful intention of injuring Ms. Minskoff from an improper or evil motive amounting to malice and in conscious disregard of Ms. Minskoff's rights, entitling Ms. Minskoff to recover punitive damages from Mr. Mendoza in such sums as a jury would find fair, just, and appropriate, to deter Mr. Mendoza and others from future similar misconduct.

117. The damages sought as a result exceed $75,000.

## **PRAYER FOR RELIEF**

For the foregoing reasons, Ms. Minskoff respectfully seeks a judgment in her favor and against Mr. Mendoza as follows:

i. Award Ms. Minskoff compensatory damages in an amount to be determined at trial;

ii. Award Ms. Minskoff punitive and exemplary damages in an amount to be determined at trial;

iii. Award Ms. Minskoff pre- and post-judgment interest and costs, including but not limited to expert witness fees, as well as Ms. Minskoff's reasonable attorney's fees and costs to the fullest extent permitted by law; and

iv. Such other and further relief as this Court may deem just and proper.

Ms. Minskoff hereby certifies, pursuant to Local Civil Rule 83.7(d)(3)(A) that the value of Ms. Minskoff's claims is substantially in excess of $150,0000, exclusive of interest and costs.

**JURY TRIAL DEMANDED**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Ms. Minskoff hereby demands a jury trial on all issues so triable.

Dated: April 7, 2023

Respectfully submitted,

GREENBERG TRAURIG, LLP

By: _____
Michael J. Grygiel (*admission pending*)
Kelly L. McNamee
Candra M. Connelly
54 State Street, 6th Floor
Albany, New York 12207
Tel: (518) 689-1400
Fax: (518) 689-1499
Email: grygielm@gtlaw.com
mcnameek@gtlaw.com
candra.connelly@gtlaw.com

*Attorneys for Plaintiff Mollie Minskoff*